IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DOUGLAS BAKER,

    Plaintiff,

v.                                                                                    No. 1:06-cv-01137

WINDSOR REPUBLIC DOORS,

    Defendant.

_____

ORDER AFFIRMING JURY AWARD FOR COMPENSATORY DAMAGES
_____

The Plaintiff, Douglas Baker, filed this civil action against the Defendant, Windsor Republic Doors ("WRD"), pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*; the Tennessee Handicap Act ("THA"), Tenn. Code Ann. §§ 8-50-103, *et seq.*; and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101, *et seq.* The Plaintiff alleged that the Defendant discriminated against him on the basis of his disability status and retaliated against him for exercising his rights under the ADA. After a four-day jury trial beginning on September 2, 2008, a jury found the Defendant to be liable on both the discrimination and retaliation claims, awarding Baker $84,000 in back pay[1] and $29,500 in compensatory damages. The Defendant timely renewed its motion for judgment as a matter of law and alternatively requested a new trial under Rule 59, Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 50(b). The Court granted judgment in favor of the Defendant on the discrimination claim, but not

---

[1]The back pay award was later reduced to $58,756.54.

the retaliation claim.  Due to conflicting legal authority, the Court allowed the parties to submit supplemental briefs regarding the propriety of compensatory relief in an ADA retaliation action. After evaluating the parties' arguments, the Court opines that the jury's $29,500 compensatory award should be sustained.

## ANALYSIS[2]

I.      The ADA

The anti-retaliation provision of the ADA provides as follows:

(a) Retaliation.  No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.
. . . .
(c) Remedies and procedures.  The remedies and procedures available under sections 107, 203, and 308 of this Act [42 U.S.C. §§ 12117, 12133, 12188] shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to title I, title II and title III [42 U.S.C. §§ 12111 *et seq.*, 12131 *et seq.*, 12181 *et seq.*], respectively.

42 U.S.C. § 12203 (emphasis added).  Section 12117, which is one of the statutes cross-referenced above, incorporates certain powers, remedies, and procedures of the Civil Rights Act of 1964, including the provisions of 42 U.S.C. § 2000e-5.  When the ADA was first enacted, this same remedial scheme also applied to claims for disability discrimination pursuant to 42 U.S.C. § 12112.

Although the text of § 2000e-5 does not allow for compensatory damages, in 1991, Congress enacted 42 U.S.C. § 1981a, which provides:

---

[2]Because this opinion only addresses discrete legal issues, a recitation of the facts of this case is unnecessary.  Although, a factual summary can be found at the following citation: Baker v. Windsor Republic Doors, No. 1:06-cv-01137, 2009 U.S. Dist. LEXIS 37176, 2009 WL 1231035, at *1-4 (W.D. Tenn. May 01, 2009).

> In an action brought by a complaining party under the powers, remedies, and procedures set forth in . . . [42 U.S.C. §§ 2000e-5 or 2000e-16] (as provided in . . . []42 § U.S.C. 12117(a)[], and section 794a(a)(1) of Title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of Title 29 and the regulations implementing section 791 of Title 29, or who violated the requirements of section 791 of Title 29 or the regulations implementing section 791 of Title 29 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12112), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

§ 1981a(a)(2) (emphasis added). This law expanded the availability of both compensatory and punitive damages for certain violations of the ADA. While § 1981a(a)(2) lists the statutory claims to which it applies, such as violations of § 12112, this statute does not explicitly reference the anti-retaliation provision at § 12203.

The Defendant asserts that the issue of whether compensatory damages are available under the ADA's anti-retaliation provision depends upon Congress's intent regarding the applicability of § 1981a(a)(2) to § 12203–a source of some disagreement among the federal courts.[3] A slight

---

[3]As this Court noted in its previous order, the only federal appellate court to have provided commentary on the issue has been the Seventh Circuit, which held that the ADA anti-retaliation statute only permits equitable remedies. Kramer v. Banc of Am. Sec., LLC, 355 F.3d 961, 965 (7th Cir. 2004). Two Fourth Circuit panels, in unpublished per curiam opinions, subsequently adopted the holding of the Seventh Circuit in Kramer without analysis. Bowles v. Carolina Cargo, Inc., 100 Fed. App'x 889, 890 (4th Cir. 2004) (per curiam); Rhoads v. FDIC, 94 Fed. App'x 187, 188 (4th Cir. 2004) (per curiam). The Second, Eighth, and Tenth Circuits, however, have affirmed compensatory damage awards for ADA retaliation claims, but these opinions did not directly discuss the issue as to whether such damages were permitted by the statute. Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1196-98 (8th Cir. 2001); Muller v. Costello, 187 F.3d 298, 314 (2d Cir. 1999); E.E.O.C. v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1244-45 (10th Cir. 1999); see also Salitros v. Chrysler Corp., 306 F.3d 562, 575 (8th Cir. 2002) (upholding an award of punitive damages). The Sixth Circuit Court of Appeals has yet to rule on this issue, but three district courts within this circuit have found that compensatory damages are not available for an ADA retaliation claim. See EEOC v. Faurecia Exhaust Sys., Inc., 601 F.

majority of courts have found that Congress's failure to specifically reference § 12203 within § 1981a(a)(2), as it did with other statutory claims, indicates the absence of an intent to extend compensatory damages to ADA retaliation claims.  See, e.g., Kramer v. Banc of Am. Sec., LLC, 355 F.3d 961, 965 (7th Cir. 2004); EEOC v. Faurecia Exhaust Sys., Inc., 601 F. Supp. 2d 971, 975-76 (N.D. Ohio 2008).  A minority view is that the cross-reference to § 12117 in § 12203 indicates Congressional intent that the remedies for violations of the latter statute should be the same as those available under Title I of the ADA, which means § 1981a(a)(2) would necessarily extend compensatory damages to retaliation in tandem with discrimination.[4]  See, e.g., Edwards v. Brookhaven Sci. Assocs., LLC, 390 F. Supp. 2d 225, 236 (E.D.N.Y. 2005).

When a court engages in statutory construction, the starting point should always be the language used by the legislature.  Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers'

---

Supp. 2d 971, 975-76 (N.D. Ohio 2008); Arredondo v. S2 Yachts, 496 F. Supp. 2d 831, 836-37 (W.D. Mich 2007); and Cantrell v. Nissan N. Am., Inc., No. 3:03-0082, 2006 WL 724549, 2006 U.S. Dist. LEXIS 45227 (M.D. Tenn. Mar. 21, 2006).  Other district courts disagree.  Compare Rumler v. Dep't of Corr., 546 F. Supp. 2d 1334, 1343 (M.D. Fla. 2008) (holding that the plaintiff may seek compensatory damages for an ADA retaliation claim), Lovejoy-Wilson v. NOCO Motor Fuels, Inc., 242 F. Supp. 2d 236, 240-41 (W.D.N.Y. 2003) (same), and Ostrach v. Regents of the Univ. of Cal., 957 F. Supp. 196, 200-01 (E.D. Cal. 1997) (same), with Sabbrese v. Lowe's Home Ctrs., Inc., 320 F. Supp. 2d 311, 331 (W.D. Pa. 2004) (holding that compensatory damages are not available for an ADA retaliation claim), Johnson v. Ed Bozarth # 1 Park Meadows Chevrolet, Inc., 297 F. Supp. 2d 1286, 1291 (D. Colo. 2004) (same), and Boe v. AlliedSignal, Inc., 131 F. Supp. 2d 1197, 1202 (D. Kan. 2001) (same).  In the Eastern District of New York, there is even a split within the same district.  Compare Infantolino v. Joint Indus. Bd. of the Elec. Indus., 582 F. Supp. 2d 351, 362 (E.D.N.Y. 2008) (holding that only equitable remedies are available), with Edwards v. Brookhaven Sci. Assocs., LLC, 390 F. Supp. 2d 225, 236 (E.D.N.Y. 2005) (allowing compensatory damages).

[4]Baker's argument is subtly different from the statutory analysis employed in other cases involving the availability of compensatory damages for ADA retaliation claims.  In a somewhat novel approach, he focuses on the Supreme Court's characterization of retaliation as a sub-class of discrimination.  See infra.

4

Comp. Programs, 473 F.3d 253, 266 (6th Cir. 2007) (citation omitted). When the statute's language is plain and unambiguous, "the sole function of the courts is to enforce it according to its terms." Id. Ascertaining a statute's directive requires consideration of the broader legislation in which the particular statutory language at issue is contained.[5] Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) (citations omitted); United States v. Meyers, 952 F.2d 914, 918 (6th Cir. 1992). Sometimes a statute that is facially clear may become ambiguous when viewed in the context of the full legislative scheme. FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132, 120 S. Ct. 1291, 146 L. Ed. 2d 121 (2000). A statute is ambiguous "where the disposition required by the text" would lead to an absurd result. Lamie v. United States Tr., 540 U.S. 526, 534, 536, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6, 147 L. Ed. 2d 1, 120 S. Ct. 1942 (2000)). If possible, the court should afford meaning to every word approved by Congress. See, e.g., Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S. Ct. 2326, 2331, 60 L. Ed. 2d 931 (1979).

A literal reading of § 1981a(a)(2) supports the Defendant's argument. The relevant statutory language extends compensatory damages to statutory claims: (1) brought pursuant to the "powers,

---

[5]Congress has expressed that the ADA, as a whole, was enacted to serve the following purposes:
>    (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>    (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>    (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>    (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

remedies, and procedures" of § 2000e-5 through § 12117(a) <u>and</u> (2) against a defendant who violated one of the specific statutory provisions listed.[6] A retaliation claim under § 12203 meets the first of these criteria but not the second because, unlike § 12112, it was not explicitly referenced in the 1991 Act.  <u>Accord</u> <u>Kramer</u>, 355 F.3d at 965 ("Section 1981a(a)(2) permits recovery of compensatory and punitive damages (and thus expands the remedies available under § 2000e-5(g)(1)) only for those claims listed therein.").  As such, a narrow interpretation of the relevant statute supports the conclusion that compensatory damages are unavailable for ADA claimants alleging retaliation under § 12203.  Although, the literal meaning of § 1981a(a)(2) is not necessarily controlling if it produces a result that is absurd or contrary to other provisions of the ADA.

The Plaintiff argues that finding § 1981a(a)(2) to be inapplicable to his claim would be contrary to Congress's intent to enact a co-extensive cause of action for retaliation when it proscribed intentional discrimination at § 12112.  In support of this position, he cites to several cases in which the Supreme Court has found that intentional discrimination encompasses retaliation.

Under the facts of <u>Jackson v. Birmingham Board of Education</u>, 544 U.S. 167, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005), a basketball coach was removed because he had complained that a girls' team was receiving unequal funding in violation of Title IX.  While the text of Title IX did not explicitly delineate a separate private cause of action for retaliation, the Supreme Court found that retaliation was contained within the prohibition against intentional discrimination based upon sex.  It reasoned as follows:

---

[6]The Court's interpretation of this language might have been different if Congress had placed the words "such as" prior to "against a respondent who engaged in" or if it had merely omitted the reference to other specific statutory claims to which it is applicable.

> Retaliation is, by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment. Moreover, retaliation is discrimination "on the basis of sex" because it is an intentional response to the nature of the complaint: an allegation of sex discrimination. We conclude that when a funding recipient retaliates against a person because he complains of sex discrimination, this constitutes intentional "discrimination" "on the basis of sex," in violation of Title IX.

Id. at 173-74 (citations omitted). The Jackson opinion noted that the Supreme Court previously had recognized an implicit prohibition against retaliation within 42 U.S.C. § 1982. Id. at 176 (discussing Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 24 L. Ed. 2d 386, 90 S. Ct. 400 (1969)). After noting that Sullivan had been decided prior to the enactment of Title IX, the Jackson Court observed that "it is not only appropriate but also realistic to presume that Congress was thoroughly familiar with [Sullivan] and that it expected its enactment [of Title IX] to be interpreted in conformity with [it]." Id. (quoting Cannon v. Univ. of Chicago, 441 U.S. 677, 699, 60 L. Ed. 2d 560, 99 S. Ct. 1946 (1979)) (alterations in original). In the same vein as Jackson and Sullivan, the Supreme Court later held that a private right of action against retaliation was included within the broad language of 42 U.S.C. § 1981, which ensures the rights of non-white people to "make and enforce contracts." CBOCS West, Inc. v. Humphries, __ U.S. __, 128 S. Ct. 1951, 1958, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008).

The Supreme Court's holding in Gomez-Perez v. Potter, __ U.S. __, 128 S. Ct. 1931, 170 L. Ed. 2d 887 (2008), is most relevant to the legal issue presented in this case. Gomez-Perez involved a postal worker who brought a claim against her employer for retaliation under the Age Discrimination in Employment Act ("ADEA"). While a separate section within the ADEA prohibited retaliation by private employers, Congress did not enact an explicit prohibition applicable to public employers. Id. at 1936. The Supreme Court, however, interpreted "the ADEA

7

federal-sector provision's prohibition of 'discrimination based on age' as likewise proscribing retaliation." Id. at 1937 (quoting 29 U.S.C. § 633a(a)). Relying on its previous opinions in Jackson and Sullivan,[7] it determined that a private action for retaliation can be implied from "remedial provisions aimed at prohibiting discrimination." Id. The Supreme Court then rejected the defendant's arguments that Congress intended retaliation to be conceptually distinct from discrimination.[8] Id. at 1938-39. It found that the presence of an explicit anti-retaliation provision–limited to private employees–within the ADEA was not exclusive because

> [a] prohibition of "discrimination" either does or does not reach retaliation, and the presence or absence of another statutory provision expressly creating a private right of action cannot alter [its] scope. In addition, it would be perverse if the enactment of a provision explicitly creating a private right of action—a provision that, if anything, would tend to suggest that Congress perceived a need for a strong remedy—were taken as a justification for narrowing the scope of the underlying prohibition.

Id. at 1938.

Like the ADEA, the ADA has both an explicit anti-retaliation provision and a separate statutory prohibition of intentional discrimination. See § 12112 (providing that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability"); § 12203 (prohibiting retaliation). One notable distinction between the texts of the two acts is that the ADA, unlike the ADEA, contains a subsection that lists several types of conduct that would constitute

---

[7]CBOCS West was decided on the same day as Gomez-Perez.

[8]Chief Justice John Roberts was the only member of the CBOCS West majority who was persuaded by the argument that Congress did not intend for retaliation to be contained within anti-discrimination provisions of the ADEA. See also Gomez-Perez, 128 S.Ct. at 1945 (Roberts, C.J., dissenting) (opining that "the text and structure of the statute, the broader statutory scheme of which it is a part, and distinctions between federal- and private-sector employment convince me that § 633a(a) does not provide a cause of action for retaliation").

"discriminat[ion] against a qualified individual on the basis of disability."[9] Although the term of art "retaliation" is not mentioned in the list, nothing in the statute indicates that the examples in

---

[9]The statute states that intention discrimination would include the following:

(1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;

(2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this title (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);

(3) utilizing standards, criteria, or methods of administration--

(A) that have the effect of discrimination on the basis of disability; or

(B) that perpetuate the discrimination of others who are subject to common administrative control;

(4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;

(5) (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

(B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;

(6) using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity; and

(7) failing to select and administer tests concerning employment in the most effective manner to ensure that, when such test is administered to a job applicant or employee who has a disability that impairs sensory, manual, or speaking skills, such test results accurately reflect the skills, aptitude, or whatever other factor of such applicant or employee that such test purports to measure, rather than reflecting the impaired sensory, manual, or speaking skills of such employee or applicant (except where such skills are the factors that the test purports to measure).

§ 12112(b).

9

subsection (b) are exhaustive of all forms of intentional discrimination. Additionally, as the Supreme Court noted, "prohibition of 'discrimination' either does or does not reach retaliation," and it should not matter what other actions also could be considered discrimination. Gomez-Perez, 128 S. Ct. at 1938; see also Jackson, 544 U.S. at 176 (noting that courts should assume that Congress was familiar with contemporary Supreme Court precedent when it enacted a statute). The Gomez-Perez decision seems to indicate that, unless a statute states otherwise, prohibitions against intentional discrimination are meant to include retaliation claims. See id. at 1937 (noting that"[t]he Jackson dissent strenuously argued that a claim of retaliation is conceptually different from a claim of discrimination, but that view did not prevail") (citing Jackson, 544 U.S. at 184-185 (Thomas, J., dissenting)); see also id. at 1944 (Roberts, C.J., dissenting) (interpreting the majority opinion as establishing a rule whereby "any time Congress proscribes 'discrimination based on X,' it means to proscribe retaliation as well").

Application of Gomez-Perez to the facts of this case requires the conclusion that the verdict in favor of Baker's retaliation action is supported by both the explicit prohibition at § 12203 and the implicit prohibition at § 12112. Because § 1981a(a)(2) undisputably permits a compensatory award for violations of § 12112, it would be an absurd result to hold that Congress intended compensatory damages to be available only under § 12112 and not § 12203–considering that these statutes codify identical causes of action for retaliation. Thus, the Court holds that § 1981a(a)(2) extends compensatory damages to ADA retaliation claims, and the jury's award of $29,500 to Baker will be sustained.[10]

---

[10]The Seventh Circuit's decision in Kramer was decided before the Supreme Court issued Gomez-Perez, CBOCS West, and Jackson, which recognized an overlap between discrimination and retaliation. For this reason, the Court does not agree with the other trial courts from the

10

II.     The THRA and THA Claims

As an alternative ground to uphold the award, the Plaintiff asserts that, even assuming the ADA does not provide for compensatory damages in retaliation cases, the jury award may be sustained under the THRA and THA.

The THRA provides that it is a discriminatory practice to "[r]etaliate or discriminate in any manner against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter." Tenn. Code Ann. § 4-21-301. "Any person injured by any act in violation of the provisions of" the THRA has a civil cause of action. Tenn. Code Ann. § 4-21-311(a). The Tennessee Supreme Court has recognized that the state legislature intended the THRA "to be coextensive with federal law." Carr v. United Parcel Serv., 955 S.W.2d 832, 834-35 (Tenn. 1997). While Tennessee courts frequently look to federal anti-discrimination statutes for guidance, they "are neither bound by nor restricted by the federal law when interpreting [state] anti-discrimination laws." Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000); see also Phillips v. Interstate Hotels Corp. No. L07, 974 S.W.2d 680, 683-84 (Tenn. 1998) (same). Tennessee courts have declined to follow federal law where "the reasoning and conclusions of federal civil rights decisions . . . conflict with the THRA." Booker v. Boeing Co., 188 S.W.3d 639, 647 (Tenn. 2006).

"[T]he THA embodies the rights and definitions of the THRA," which means these two

---

Sixth Circuit that have followed the holding in Kramer. See Faurecia Exhaust Sys., 601 F. Supp. 2d at 974-76; Arredondo v. S2 Yachts, 496 F. Supp. 2d 831, 836-37 (W.D. Mich 2007); Cantrell v. Nissan N. Am., Inc., No. 3:03-0082, 2006 WL 724549, 2006 U.S. Dist. LEXIS 45227, at *3-6 (M.D. Tenn. Mar. 21, 2006).

claims can be analyzed together. Barnes, 48 S.W.3d at 706 (citing Forbes v. Wilson County Emergency, 966 S.W.2d 417, 420 (Tenn. 1998)); see also Tenn. Code Ann. § 8-50-103. The remedies available under the THRA are codified at Tenn. Code Ann. § 4-21-306 and 311. The THRA permits the Tennessee Human Rights Commission to order, among other things, "[p]ayment to the complainant of damages for an injury, including humiliation and embarrassment, caused by the discriminatory practice, and cost, including a reasonable attorney's fee" as well as "[s]uch other remedies as shall be necessary and proper to eliminate all the discrimination identified by the evidence submitted at the hearing or in the record." Tenn. Code Ann § 4-21-306(a)(7)-(8). For cases where the plaintiff has brought an action in court, the THRA provides that

> the court may issue any permanent or temporary injunction, temporary restraining order, or any other order and may award to the plaintiff actual damages sustained by such plaintiff, together with the costs of the lawsuit, including a reasonable fee for the plaintiff's attorney of record, all of which shall be in addition to any other remedies contained in this chapter.

Tenn. Code Ann. § 4-21-311 (emphasis added); see also Carver v. Citizen Utils. Co., 954 S.W.2d 34, 35 (Tenn. 1997) (reading "§ 4-21-306 and § 4-21-311 in *pari materia*"). Courts have found that the term "actual damages" in section 311 is synonymous with compensatory damages. England v. Fleetguard, Inc., 878 F. Supp. 1058, 1061 (M.D. Tenn. 1995) (citing Cripps v. United Biscuit of Great Britain, 732 F. Supp. 844, 846 (E.D. Tenn. 1989)).

  The THRA makes no distinction between the remedies available for discrimination claims and retaliation claims because both are expressly placed into the category of "discriminatory practices." Tenn. Code Ann. § 4-21-301, 401. Thus, compensatory damages would be available for Baker's retaliation claim under state law. See, e.g., Bailey v. USF Holland, Inc., 526 F.3d 880, 888 (6th Cir. 2008) (upholding a compensatory damage award for a THRA discrimination claim);

Chapman v. Amsouth Bank, No. 1:04-CV-237, 2005 WL 3535150, 2005 U.S. Dist. LEXIS 38382, at *27-30 (E.D. Tenn. Dec. 22, 2005) (same).  Federal law would not prohibit such an award because relief under the ADA is not exclusive, and local jurisdictions may allow for greater remedies than those provided by Congress.  See Shotz v. City of Plantation, 344 F.3d 1161, 1176 (11th Cir. 2003) (noting that "Congress apparently 'intended that persons with disabilities have remedies and procedures parallel to those available under comparable civil rights laws'") (quoting H.R. Rep. No. 101-485, pt. 3, at 66 (1990)).  The ADA expressly provides that "[n]othing in this Act shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State or political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this Act."  42 U.S.C. § 12201.  As such, the Plaintiff is correct that the THRA and THA provide alternative grounds upon which his compensatory award should be sustained.

## CONCLUSION

For the reasons articulated herein, the Court **DENIES** the Defendant's motion for judgment as a matter of law as to the issue of compensatory damages.

IT IS SO ORDERED this 10th day of July, 2009.

                                      s/ J. DANIEL BREEN
                                      UNITED STATES DISTRICT JUDGE